Good morning, your honors. May it please the court, Randall Steinberg for the petitioner. I'd like to reserve two minutes at the end for a rebuttal. This is a case about when water turns to ice, or when does a staggering increase in the number of violent murders of women in Guatemala become material rather than incremental. In order to prevail on a motion to reopen, a petitioner has to show two things. One, change country conditions, and two, a prima facie case for relief. Regarding change country conditions, the 90-day limit to file a motion to reopen will not apply if the motion is based on changed conditions, the evidence is material, wasn't available, and couldn't have been discovered at the first hearing. Here, Ms. Tovar was denied asylum in 1995. She filed her motion to reopen in 2011 based on two facts that didn't exist in 1995. These facts, when coupled together, illustrate a material change in conditions in Guatemala that will have a direct effect on Ms. Tovar. Number one, the first condition is the 400 percent increase in femicide in Guatemala between 1999 and 2008. That's found at record 193. Judge Silberman The record indicates the 400 percent or whatever the number is increase over a period of time. Does the BIA's decision imply that your client should have filed the motion to reopen earlier given that there was already a high level of violence at one point and it continued to increase? I know you take issue with the immaterial and incidental and I think that's a good point, but I'm trying to figure out whether the motion might still be untimely even if there were material change in country conditions. Judge Silberman I believe the BIA did think it was untimely. I'm not sure that they thought it was untimely because the record of violence was increasing, but what I wanted to point out about that is that regarding the motion to reopen based on changed country conditions, Congress never imposed any time limit for... Judge Silberman Oh, but is it really true? So let's assume that a changed country condition is apparent in 2005. Can you wait until 2015 to file the motion to reopen? Judge Gould I'm not sure that it's advisable to wait until 2015, but I don't think there's any express prohibition... Judge Silberman I don't think the BIA... Judge Kahlil I don't think the BIA... Judge Kahlil Judge Gould, I'll ask afterwards. Judge Gould No, go ahead, Judge Gould. Judge Kahlil Well, on the same point, I think that Judge Hurwitz was inquiring on. I was wondering if this data showing the 388% increase in violence against women, did that just become available shortly before she filed to reopen? Or was the data year by year available to her from some published source? And what does the record tell us on that? From what I remember in the record, the record, the part of the record that shows the 400% or 388% increase shows it by 10 years. It didn't break it out. It wasn't... Judge Silberman My question to you is whether the record tells us if after five years, for example, she had data available to her showing the increase at that time, or after five years or after nine years. In other words, could she just wait as year by year it went up incrementally, and then say, well, now the aggregate amount is a big change? Judge Kahlil I don't believe the record showed anything year by year, not from what I remember seeing, Your Honor. Judge Kahlil I think the record does show year by year numbers, but what it doesn't show, I think, is the question Judge Gould is asking, which was, was there, was this information available to her earlier in some sort of published form? Before 2009, I think, which is the last year in the, or 2010, which is the last effective year in the material you submitted? Judge Silberman I agree. I don't believe it shows what Judge Gould is asking. Judge Kahlil So what are you, what relief are you seeking? Judge Silberman We're simply seeking a remand back to the court so that they can hear, they can hear a new case based on the motion to reopen, based on the new facts. She has a prima facie case for relief. Judge Kahlil Could the BIA or the IJ on remand still find the motion untimely? Because even if country conditions change, they have been changed for such a long period of time that your client wasn't diligent in pursuing a motion to reopen. Judge Silberman I believe that that's within their discretion to do. But what I was saying was she has shown a prima facie case for relief. She doesn't have to prove that she actually warrants relief. The standard is whether the new facts warrant exploring the issue further. Judge Kahlil She'd still have to demonstrate, for example, that she, that the persecution would be on account of a membership in a social group. We've suggested that she may be in a social group. Judge Silberman Yes. Judge Kahlil But that's never been held. Judge Silberman No, I agree. And I think she does have a prima facie case based on her membership in a social group. And the social group is women from Guatemala threatened with death if they return to Guatemala, and they're threatened by their abusers who are present in the country. And it meets the standard under the board's decision in MEVG, because she's shown that she's, that she shares a common immutable characteristic, which is gender and nationality. It was defined with particularity, and it's socially distinct because there's  Judge Kahlil Well, that's your argument. It may be a winning one, but we've never actually held that, have we? Judge Silberman No, I don't believe so. Judge Kahlil Oh, nor has the BIA. Judge Silberman No, Your Honor. But regarding a prima facie case, that she is socially distinct, if you look in the record at 187, it says femicide describes the gender-motivated killing of a woman, and we believe that the use of the term shows that the group women from Guatemala is socially distinct. Also at record 133, it says the gender of the victim is a significant factor in the crime. So the nexus for rape, torture, and murder is gender. She also has a prima facie case for CAT, because the sheer brutality of the killings, which is the pain they cause, qualifies as femicide, as torture. That's found at record 133. Judge Kahlil Is any of that before us? Judge Silberman What's that? Judge Kahlil Is any of that before us? Judge Silberman I believe so. It was in the record. Judge Kahlil Well, but the BIA didn't say, we're turning you down because you haven't established a prima facie case of anything. The BIA said what you haven't done is shown to change country conditions. Judge Silberman That's true. Judge Kahlil And so that's the only issue that's in front of us, right? Judge Silberman Well, yes, but we believe that the BIA abuses discretion by not focusing on a prima facie case. Judge Kahlil Well, but if we sent it back, it would focus on that, and it might rule against you, and it might rule in your favor. But that's an argument you make to them, not to us. Judge Silberman Okay. Well, regarding the changed country conditions... Dr. R. R. R. R. I would think that saying we have to decide two issues in your favor would be something you would oppose. But I hear you saying that we have to decide that I would have said... I would have thought you immediately would say, no, that's not before you. That's something to do on remand. Judge Silberman No, no, no, Your Honor. It's not. I was just saying that the BIA abuses  Dr. R. R. R. I abuses discretion as to the timing issue. And that's why I asked you is the question of whether or not it's a protected group or whether she was threatened or any of that before us. Because if you say it's before us, as you initially did, then we have to decide that issue, too, and you have to win on both issues. Is that where you want to go? Judge Silberman No, Your Honor. I'll retract that. If I could reserve the last two minutes, I'd appreciate it. Thank you. Dr. R. R. R. Okay. We'll hear from the government. Jonathan Robbins May it please the Court. Jonathan Robbins here on behalf of the Respondent, the Attorney General, Loretta Lynch. Good morning, Your Honors. The issue before the Court today is whether or not the Board abused its discretion in denying petitioners untimely motion to reopen. Judge Silberman So could you turn right to what I think is the meat of this? Jonathan Robbins Sure. Judge Silberman There might have been lots of good reasons for turning down the motion to reopen as untimely or because she wasn't part of a social group or because she hadn't made a prima facie case, or maybe those wouldn't have been good reasons. But what the BIA said is that there's been no material change in the level of violence against women during the relevant time period. And 400 percent seems like a material change to me. So why isn't that finding not supported by substantial evidence, if you will? Jonathan Robbins Well, what the Board found is that that specific statistic, the increase in femicide rate, was incremental. What they did is they looked at that in terms of the entire population, a population of 14 million people. So we're talking, I mean, homicide rates, femicide rates, the increase they go up in cities all over the world every year. Judge Silberman I understand that, but incremental doesn't mean immaterial, does it? If something increases by 2 percent every year, then after some period of time it's increased 20 percent, 50 percent, 100 percent. Why wasn't this a material change in the situation that a woman returning to this country would face? Jonathan Robbins Because the Board is looking at that statistic among all the other evidence that's presented. And when you read all the different articles and the background documentation regarding the situation in Guatemala, it becomes readily apparent that the violence against women, while certainly regrettable and terrible, has been going on for a long time. Judge Silberman But the Board didn't say, well, maybe it did, and that's what I wanted to ask you. Did the Board, was the Board saying, look, you could have gotten asylum back in 1999 had you only thought to apply then? Or if that were the case, I'd understand it. But what it's saying is, ah, things haven't changed that much since the beginning. Jonathan Robbins She could have filed this same claim. I don't want to say she's eligible for asylum, but what she could have done is she could have filed this same claim back in 1995 because the violence against women was prevalent in Guatemala at that time. Judge Silberman How prevalent? Jonathan Robbins Very prevalent, according to the documentation in this record. Judge Silberman Well, the statistics don't begin until 1999, do they? Jonathan Robbins Well, those are femicide statistics, which is one aspect of the violence of women in Guatemala. And certainly the femicide rate has gone up, although it does indicate that since the femicide law was passed in 2008 that the rate has actually gone down, albeit incrementally. Judge Silberman Although that wasn't what the BIA rested its finding on. Jonathan Robbins Right, but I'm just looking at the record evidence here. And at the end of the day, this is a factual determination by the Board. I mean, your question sort of gets to the issue of how do you determine what's incremental and incidental versus material change. Judge Silberman Well, but 400 percent over the relevant period of time strikes me in an untutored way as a big change. It's four times as bad as it used to be. Is that a factual finding or is that a legal conclusion? Jonathan Robbins Well, I think they're looking at the facts as a whole to determine whether this meets a materiality requirement for changed country conditions. I mean, you could say one year one person could be murdered and the next year four people could be murdered and that would be a 400 percent increase. But in the general scope of the entire... Judge Silberman But that's not what these statistics show. Jonathan Robbins It's not, but it's still a relatively small portion of the population. Judge Silberman But I guess the question I'm asking, and see if you can help me on this, is are we reviewing a factual determination by the BIA? The facts are not in dispute. Well, they're merely statistical. Or are we reviewing a legal conclusion from those facts? Jonathan Robbins Well, it's a legal conclusion from the facts, obviously. The Board has to determine what... Judge Silberman Those are not the only two choices. There's also an abuse of discretion, the question of whether it was an exercise of discretion. So before you answer the question, lock yourself into something. Just make sure you consider all three possibilities. Jonathan Robbins And we may be reviewing a legal conclusion for abuse of discretion. I don't know. Judge Kaczynski focuses on my question. How do we review the Board's determination? With what kind of... Judge Silberman We certainly review the Board's determination under the abuse of discretion standard. That's well-established law. The question here is whether the Board abused its discretion. And whenever we're looking at whether or not the Board abused its discretion, what we're looking at is whether the Board's decision was in some way arbitrary, capricious or contrary... to apply the wrong legal standard. Jonathan Robbins It would be. That would be the contrary to law portion. But it doesn't... I mean, the Board didn't apply an incorrect legal standard here. It appropriately determined that the motion to reopen was untimely. There's no dispute about that. It appropriately noted that there was a potential exception to the temporal bar for materially changed country conditions in Guatemala. And it applied the record evidence in determining that the evidence of this record did not demonstrate the material changed country conditions that were needed. That's not an error of law. That's not constitutional law. Judge Gold Yes. Judge Silberman Judge Gold, if I could interject. Just a simple question. Judge Gold Yes. Judge Silberman Does the record answer the question I asked your colleague? That is, was this femicide data available year by year in some published form so that she could have looked at the issue and presented it earlier? Or was it just collected and came out shortly before she filed to reopen? Judge Gold The record doesn't tell us one way or the other whether these statistics were available earlier. But I don't think it's relevant to this analysis anyway because the Board didn't make a finding that the... didn't deny the motion on the basis that the evidence was previously available. The Board simply denied the motion on the basis that Petitioner did not demonstrate changed country conditions. So what Your Honor is talking about would go to a separate finding that the Board didn't make. But to answer your question directly, it's not clear from the record whether these statistics were available previously. I suspect that they were, but I can't... the record doesn't indicate one way or the other. Judge Silberman Okay. Thanks. That answers. Judge Gold Is there a percentage increase in your view that would be an abuse of discretion? I mean, or put it differently, as long as the Board looks at the numbers and concludes that they're immaterial and insignificant, our job is done? Judge Silberman I don't know that there... it's not like a social security grid. I don't know that there's one specific answer that a certain percentage would always make... meet the definition of changed country conditions. It's always... it has to be done on a case by case basis, and that's the Board's job when they're looking at the record evidence. I don't know that... Judge Gold Well, but I guess I'm asking is do we... as long as the Board applied the correct legal standard... Judge Silberman Yes. Judge Gold ...and then no matter what conclusion it reaches with respect to the increase in the country, we must defer to it? Judge Silberman As long as it's not arbitrary or capricious, as long as it's reasoned and supported by the record evidence, yes. Under the abuse of discretion standard, that would be within the Board's discretion. There's also the separate issue... Judge Gold How do we make that decision as to whether it is arbitrary or capricious? Judge Silberman Well, I guess the Court would look to whether or not the Board appropriately considered the evidence, whether it... I mean, I don't know... I'm not exactly sure what you're asking me. Judge Gold Well, but you're answering Judge Kaczynski's question the same sort of the same way I worry about your answer to mine, which is it doesn't really matter what the number is. It could be 10,000 percent as long as the Board looked at the evidence carefully and reached a conclusion. That can't be our... our review is not that limited, is it? Judge Silberman Well, I mean, I don't think the Court supplants its... its analysis of the facts for the Board if it's... it's not akin to a standard... Judge Gold Well, the Board has analyzed the facts. I mean, the facts are not in dispute. Everybody agrees that... Judge Silberman Yes. Judge Gold ...that on these statistics, violence against women or femicide increased 388 percent. That's really the only relevant fact here because... Judge Silberman Yes. Judge Gold ...I don't... I don't see petitioners presenting any other evidence in support of her claim. Judge Silberman Yes. Judge Gold Our boyfriend went back, but she knew that already, or her partner. So what conclusion do we reach from that? Do we say, well, the Board didn't think 388 percent was a lot, so we shouldn't either? Or... and if that's the case, then what... what's the limit of... do we have any role in reviewing at all? Judge Silberman I mean, the only role I know is the established standard of review, which is to look at whether the determination is arbitrary capricious. I mean, I'm not sure how you get... 388 percent means that it goes... Judge Gold Well, the Board provided a context... Judge Silberman Let me... Judge Gold Oh, I'm sorry. I apologize. Judge Silberman ...finish. Well, I'm still talking. If you... Judge Gold I apologize. Judge Silberman ...start answering the question, they're not going to hear the whole question, are you? Judge Gold Correct. Judge Silberman Do you want to try answering it now? Judge Gold I apologize, Your Honor. I didn't realize you were finished. You weren't finished. Judge Silberman Do we know what the percentage, the likelihood went from to... from what to 50 percent to 80 percent? The likelihood of being subject to such violence? Judge Gold With respect to... we don't know the specific percentage of what... of her specific... Judge Silberman You know, what does specific mean in that context? Do we know the general percentage? Judge Gold I don't know the general percentage, no. I don't think we can tell... Judge Silberman Well, we do know the number of women killed, don't we? That's what the record shows. Judge Gold We do. Judge Silberman In 1999, there were somewhat less than 200 women killed. And in 2009, there were somewhat more than 700. So there... there's specific data to respond to Judge Kaczynski's question, isn't there? Judge Gold There's also specific information in the record that... Judge Silberman It's not exactly my question. The question is not... I mean, I understand what an increase of 400 percent means in the raw numbers. The question is, if you are a subject of this crime, how did that vary? Did it go from 1 percent to 2 percent? Did it go from 1 percent to 4 percent? Did it go from 10 percent to 40 percent? Do we know... do we know what... Judge Gold We don't know it in terms of percentages, but we do have facts in the record that would be indicative of... of the likelihood of persecution. For example, the evidence in the record says that the majority of the violence towards women in Guatemala occurs from adolescence to age 30. The petitioner was born in 1962, so her likelihood would seem to be less than the evidence that's indicated here. I don't want to get too far into that because the Board didn't make a finding on prima facie eligibility, so it wouldn't be appropriate for the Court to get into that prima facie case. That... that really goes to a prima facie standard, the likelihood of overall persecution. The only basis for the Board's decision in this case was the specific finding that there were no changed country conditions. So that, I think, Your Honor's question is getting to a separate question that the Board didn't ultimately get to. Does that answer your question? Judge Gold Not really. Judge Blank I'm sorry. Judge Gold I mean, we have to... we have to determine whether or not the... the agency abuses discretion. And it seems to me that there's something that... that would justify a grant for asylum. There's a certain amount of persecution. I think the Supreme Court said 1 in 10 or something? Judge Blank Yes, Your Honor. Judge Gold So, for example, if there is a 10 percent chance of being persecuted, or 11 percent chance, or 12 percent chance, or 20 percent chance, or 50 percent chance, that's enough, assuming the other... all the other requirements of persecution are met, then something in that range, somewhere above 1 in 10, would be enough to justify a grant of asylum. Right? Judge Blank Yes. Judge Gold So, it matters whether these numbers have gone from somewhere below 10 percent or somewhere above 10 percent, or whether they are somewhere in the low single digits, or whether they are in, you know, they've gone from 20 percent to 30 percent. It matters because that affects directly the likelihood that you're going to have an asylum claim, a viable asylum claim. Judge Blank Not necessarily, Your Honor, because, for example, there could be a situation where it's possible that an alien could meet the 10 percent threshold back in 1995, and again meet the 10 percent threshold in this current situation. That's not relevant to the analysis of changed country conditions. The only thing we're looking at in changed country conditions is... so the time bar could bar, potentially, somebody who was previously eligible for asylum from applying for asylum now. Judge Sotomayor I think you've just dug yourself a hole. Because, I mean, what you're saying is it might not matter if it went from somewhere above 10 to somewhere higher than that. But I think implicitly you're agreeing that if it went from below 1 in 10 to above 1 in 10, then that would be a material change. If it was 4 percent and went to 12 percent, 4 percent would be less than 1 in 10, which the Supreme Court said is the standard, and if it's now gone to 12 percent, then you've just crossed the threshold, and wouldn't that be inherently necessarily material? Judge Blank That is something that the Board would have to look at on a case-by-case basis. That potentially might be a basis for reopening... Judge Sotomayor Okay, so if it might be, don't we have to, in deciding whether or not the I mean, I don't even have an idea if going from 200 to 700, I don't know what the population of the country is, I don't know the number of women, so I don't know what percentage of the population that is, what is the likelihood, whether we're in the low single-digit range or we're in the upper double-digit range or middle double-digit range. It does seem to How can we judge abuse of discretion if we don't think the Board has looked at that? Judge Blank Well, the Board did look at it in this case. Judge Sotomayor No, but it didn't. The Board didn't say, focus on what Judge Kaczynski is asking. The Board didn't say, even after all these increases, the level of violence against women doesn't reach the level of persecution, it doesn't reach the 10 percent or whatever threshold. It simply said it hasn't materially changed, and that seems to be wrong. It may still be that the Board could have turned down this application on any number of grounds, but it didn't say, it didn't say even now it doesn't reach the threshold where it would give rise to a persecution claim. Well, I think what the Board was saying was that it wasn't material to her prior ability to apply for this specific claim for relief back in 1995, so it's related to her ability to file a claim. That's what makes it material. Does it change her specific claim? I see I'm out of time. Thank you very much for your time. I'm still confused. Okay. So on behalf of the United States, if we were to dig in the record and find that the, I know it's not there, but let's say we were to dig and find evidence that it went from 8 percent to 12 percent. So the likelihood, if you are a woman in the country, your chance of getting persecuted on behalf, on account of being a woman, used to be something in the 8 percent range, and it's now in the 12 percent range. Let's say we find that. Would that be an abuse of discretion? Not necessarily, Your Honor. In the context of what, if the Board in that case had done what the Board did here, which is not address... Let's say it did exactly what it did, except that we just dug through the record and we found a gem. We found a piece of evidence that said, you know, at the time she applied it was 8 percent. Now the chance of being, you know, is 12 percent. The answer would be no, because that would go to a prima facie likelihood of persecution. That would be demonstrating that the petitioner went from not having a prima facie case of asylum to having a prima facie case of asylum. The Board in this case did not make a prima facie determination. All it said was, all it made was a determination that the country conditions hadn't significantly changed since the time of her previous merits hearing. That's the only decision that the Board made. What you're talking about goes to a separate determination. But why isn't that wrong if the likelihood of persecution has gone from below the threshold? The Supreme Court has said 1 in 10, so, you know, we have to take that as sort of a gospel truth. So if the evidence, as it turns out, as I'm hypothesizing, is that it went from below the threshold level given by the Supreme Court and increased to above that, why wouldn't a determination that it's not material, why wouldn't that be an abuse of discretion? It used to be you were not subject to persecution because likelihood was too low. You've just gone over. Why wouldn't that determination be an abuse of discretion? Because the change that we're looking for when we're looking at a change in country conditions is the conditions at the time of the hearing versus the conditions now. And what your Honor's analysis is sort of suggesting is somehow blending the prima facie analysis into the analysis of changed country conditions. No, not at all. Not at all. You know, she says, look, there are changed conditions. I got turned down the last time because the likelihood of being persecuted was too low. It was below what the Supreme Court said is, now I've got new numbers, and the numbers show that it's now more than 1 in 10. So therefore, there's a change, and the change is material because it takes me from a situation of non-persecution to a situation of possible persecution. Why isn't that an abuse of discretion, if that was sort of the numbers? Because the standard for determining whether a condition is, again, it's an abuse of discretion standard, the Board has a wide latitude of discretion in determining whether or not to grant or deny a motion to reopen. And when the Board is looking, I mean, it's a case-by-case analysis that the Board has to determine what to evaluate the likelihood. Again, it's not like a summary judgment motion. It's akin to a motion to reopen for a new trial. Again, the analysis is getting into the prima facie eligibility. When you're talking about percentages, you're talking about the alien's likelihood under a prima facie case for relief. And this is just an analysis of the country conditions at the time of the hearing versus the time now. And when the Board's looking at it, all they're looking at is, is it material enough such that it's worthwhile for developing on review? That's an issue of the Board's discretion. And again, I wish I had a better answer for you than it has to be done on a case-by-case basis, but that's what the Board does every day. It looks at the evidence on a case-by-case basis and does that. Is that your best answer? We'll just have to go with it. Okay. Mr. Robbins, let me ask you a question you don't have to answer. If the government, and I think this, to me, this appears to be a case that might be amenable to mediation, I don't want to, it requires two willing parties. I just ask that you and the other side discuss whether or not this is such a case. You don't have to answer that. Okay. Thank you very much for your time, Your Honor. Okay. Your Honors, a 388 percent increase in murders of women in Guatemala is a significant increase. It's a significant material increase. How do we know it's a significant increase? If it's still below the threshold of what the Supreme Court has said is a prima facie case of persecution, 10 percent chance is pretty high. I mean, the idea would be that every 10 times you go out, you get persecuted. You know, it's pretty high. If it's gone from low single digits to somewhat higher single digits, why is it material? It's still not persecution. Well, I think we're looking at a numbers analysis of this. No kidding. That's perceptive abuse. Do you have any numbers about abuse? Because that's the class you claim you're in, the social group. Murder is one form of abuse, but there are others. Does the record help us knowing whether the rate of abuse of women in Guatemala changed over this time period and to what level it reached? There's at least something here suggesting that one-third of the married women or women in relationships in Guatemala are subject to some sort of abuse. But I don't know whether that changed over the relevant time period. Is there anything in the record that gets the issue Judge Kavinsky's been asking about? I don't remember seeing statistics for actual abuse in the record. I remember seeing statistics just for murder. But going back to what I – If it's absent, isn't that your burden? I mean, you make a petition for reopening. You need to show a material change. Isn't that your burden? So if it's absent, doesn't that count against your client? No, Your Honor, because we're focusing on femicide and the murders of women. That's the – that was the statistics we were looking at. Well, that's right. But if the likelihood of suffering this is far below the Supreme Court threshold of what amounts to persecution, which is 1 in 10, then why does it matter? I mean, if you can't show that somehow it used to be less, it's now more, you have to be on both sides of that. You have to have been below and before at the last hearing and now above at this hearing. Your Honor, I think that the – Because that's when it moves into persecution, once you pass the 10 percent threshold. I understand, Your Honor, but talking about thresholds goes to a prima facie case, and we're talking about the board abusing its discretion for saying that a – Well, but that's the very thing. I mean, it says, look, we're going to look and see what – you didn't have a prima facie case the last time. We're now going to see whether you've made a prima facie case. If you have, then there's been a material change. But if you can't make a prima facie case now, there's no material change. That seems to make perfect sense, doesn't it? Well, the prima facie case issue can be decided on remand because the petitioner doesn't have to prove today in this forum that she has a prima facie case. All that she needs to show is that the changed country conditions warrant – But how do you show it except by measuring it against the prima facie case? How can you tell whether or not it's a material change without showing that, look, there's been a change which now enables me to make a prima facie case? If there's been a change and you still can't make a prima facie case, then what's – why is it material? What's the point of reopening? Why is it an abuse of discretion for the BIA to say, well, you know, there's been a change, but you still don't have a prima facie case, so there's no point in reopening? Because the board completely ignored evidence of a material change. Now, the answer to this question is that the board could find that, but that's not what it found, right? It may well be that your claim fails, that you can't prove that any of this arises to the appropriate level of persecution. That's – The question is whether you've shown a material change in country conditions. How do we measure material change? In other words, if there had been no murders of women in Guatemala in 1994, and today 700 were murdered, that would be a material change in the number of women murdered in Guatemala. I'm not sure it would be enough to make your prima facie case for relief. They're two separate issues, aren't they? Yes, I agree. And, again, I think that the prima facie case is something that can be made on remand, but a 388 percent increase in the violent murders of women in Guatemala is something that, per Ordonez v. INS, warrants sending back to the court. Why? Why? If you're still below the persecution threshold, what does it matter? You've got to show something that's persecution. Persecution means 1 in 10 chance. If you're not anywhere close to that, why does it matter? Why does it matter that there's been an increase? Why is that kind of increased material if you haven't crossed the threshold into persecution? Again, Your Honor, I think that that's something that the lower court, the immigration court, needs to decide on remand. Only if you've presented evidence. If you haven't presented evidence, then why do you get a makeover? I believe we have. Well, what have you presented that shows that you are now in the range of persecution? What have you shown that says, well, okay, this, the numbers now, were the finding of persecution? If you don't, then why is it material? Well, there's also another issue that I didn't get to when I was doing my regular argument is that there's also the presence of her former husband. Well, but she knew about that more well before she fathered. He was deported in 2000, right? Yeah. Yeah, he was deported in 2000. So that can't be a material change in country conditions that's occurred within a reasonable time of her filing, can it? But it was a change in country conditions since her first hearing in 1995, and, again, Congress didn't impose any time limits on filing a motion to reopen based on changed country conditions. So I would say that his presence there is a material change also because he's a convicted spousal abuser, a convicted child molester, so he's proven himself to be a sexual predator. No, we know the record about him. Okay. The question is, so she can wait until 2050 to file an application based on his presence there? I don't think she should wait until 2050, but there's no prohibition against waiting until 2050. Absent the increase in statistical femicide in the country, would his presence alone be a changed country condition? I think it's a factor. No, that's not what I'm asking. Oh, sorry. I'm asking, let's assume you didn't have any statistics and all you had was the bad husband was sent back there and he was a terrible person. Would his presence alone be a changed country condition? I think it could be because he threatened to kill her if she returned to Guatemala. Changed condition in the country? It's a changed circumstance, Your Honor. Okay. Okay, thank you. Thank you.
judges: Kozinski, Gould, Hurwitz